**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**ROGER LEE GILLETT**                                                        **PETITIONER**

**v.**                                                  **CIVIL ACTION NO. 2:19-cv-44-TBM-MTP**

**PELICIA HALL**                                                             **RESPONDENT**

<u>**REPORT AND RECOMMENDATION**</u>

BEFORE THE COURT is the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 filed by Roger Lee Gillett.  Having considered the submissions of the parties, the record of the state court proceedings, and the applicable law, the undersigned recommends that the Petition [1] be DENIED.

**FACTS[1] AND PROCEDURAL HISTORY**

The investigation into the deaths of Linda Heintzelman and Vernon Hulett began in Russell, Kansas.  On March 29, 2004, Debbie Milam, Roger Gillett's aunt, informed the Russell County, Kansas, Sheriff's Department that, on the previous day, Gillett had manufactured illegal narcotics at his grandfather's farm in rural Russell County (hereinafter "the Gillett farm") and also had stored at the farm a pickup truck he had stolen.  The Sheriff's Department contacted Agent Matthew Lyon, a narcotics investigator with the Kansas Bureau of Investigation (KBI), for assistance.  Based on information received from Milam, as well as other corroborating information, Lyon sought out and obtained two search warrants: one to search the residence where Gillett was staying, located at 606 North Ash Street, Russell, Kansas, and one to search the Gillett farm, located at 5482 190th Street in rural Russell County, Kansas.

---

[1] The factual summary is taken from the Mississippi Supreme Court opinion affirming the conviction of Petitioner. *See Gillett v. State*, 56 So.3d 469 (Miss. 2010).

Upon executing the search warrant on 606 North Ash Street and locating illegal narcotics at the residence—as well as having reason to believe that Gillett had been involved in an assault, the manufacture of illegal narcotics, and a robbery—officers from the Sheriff's Department located and arrested Gillett, along with his codefendant, Lisa Chamberlin (*see Chamberlin v. State,* 989 So.2d 320 (Miss.2008)), at a local park.  The officers transported Gillett to the Russell County Jail, where he was interviewed by Agent Lyon.  Before commencing the interview, Lyon showed Gillett a copy of the search warrant for 606 North Ash Street and read Gillett his *Miranda* rights.  During the interview, Gillett told Lyon that he recently had hitchhiked back to Kansas from Hattiesburg, Mississippi, where he had been staying with his relative, Vernon Hulett, for one or two months.  He also told Lyon that he had not been up to the Gillett farm in months.  Then, upon Lyon telling Gillett that a white pickup truck with Mississippi tags had been reported stolen, Gillett stated that he needed to speak with an attorney.  However, as Lyon was preparing to take Gillett back to jail because Gillett had invoked his right to an attorney, Lyon told Gillett what he was being charged with and "that there might be some more charges that come out of it."  Curious, Gillett asked, "Like?" and then withdrew his request for an attorney in order to learn more about the information Lyon possessed.  The interview then continued for a significant period of time until Gillett again invoked his right to an attorney.

That same day, March 29, 2004, the search warrant on the Gillett farm also was executed. In a metal shed at the farm, officers located a white pickup truck that was found to be registered to Linda Heintzelman (Vernon Hulett's live-in companion), as well as items consistent with the manufacture of methamphetamine.  In a wooden shed at the farm, officers located a freezer that was bound shut with duct and electrical tape.  When officers opened the freezer, they saw a dead body or bodies inside.  The officers then temporarily stopped the search until they could obtain a

homicide search warrant.  Once they had secured a homicide search warrant on the farm, they removed from the freezer what turned out to be two bodies, a male and a female, and prepared them for transportation to the pathologist's facility.

Gillett was not interviewed further regarding the bodies found in the freezer; however, Chamberlin gave officers a statement and led them to a location in a local landfill where, according to her, she and Gillett had disposed of trash bags containing property associated with the murder victims.  The seven trash bags that the officers collected from the landfill contained, among other things, Vernon Hulett's and Linda Heintzelman's wallets containing their drivers licenses, Hulett's work shirt and work pants, both with his name printed on them, a crocheted pillow appearing to have blood on it (later found to match other pillows on Hulett's and Heintzelman's bed in their Hattiesburg home), a Hattiesburg phone book, and a pair of New Balance tennis shoes with blood-like stains on them.

Based on the evidence recovered, the Kansas officers contacted the Hattiesburg police and asked them to check the residence shared by Vernon Hulett and Linda Heintzelman, located at 908 South Gulfport Street, Hattiesburg, Mississippi.  Hattiesburg officers subsequently searched the residence and found, among other things, carpeting removed from the floor and rolled up, multiple blood-like stains throughout the house, a pried-open safe, and a shoe print in a reddish stain.  The Mississippi Crime Laboratory determined that one of the New Balance shoes recovered from the garbage bags at the Kansas landfill was the source of the shoe print found at the 908 South Gulfport Street residence.  The Mississippi Crime Laboratory also determined that blood on the shoe was Linda Heintzelman's blood.

At trial, it was revealed that Gillett and Chamberlin had driven a blue Mitsubishi Eclipse from Kansas to Mississippi around the end of February 2004, and had been staying at the

Hattiesburg home of Vernon Hulett, Gillett's cousin, and Linda Heintzelman, Hulett's companion.  One day, while Gillett, Chamberlin, Hulett, and Heintzelman were on their way to the Mississippi Gulf Coast, with the couples driving their respective vehicles, Chamberlin's and Gillett's Mitsubishi was damaged in a wreck, allegedly caused by Heintzelman cutting them off and forcing them into a ditch.  Gillett was very angry about the car wreck, even telling Hulett's mother after the wreck that he, Gillett, would like to take Heintzelman and push her through a plate-glass window.

The last time anyone saw Hulett and Heintzelman alive was on March 19, 2004. When Hulett's nephew came by Hulett's house on March 20, he found only Gillett and Chamberlin there.  Gillett told the nephew that Hulett and Heintzelman had gone to the Coast with a friend. Similarly, when the nephew stopped by Hulett's house on March 21, he found only Gillett and Chamberlin there.  While visiting with Gillett and Chamberlin that day (March 21), the nephew noticed that the carpeting had been ripped up, and when he inquired about it, Gillett told him that Hulett had asked him to rip it up because Hulett had come into some money and was bringing new carpeting back with him from the Coast.  The nephew also saw Gillett and Chamberlin in Hattiesburg on March 23.

Shortly thereafter, Gillett and Chamberlin arrived in Kansas, driving Heintzelman's white pickup truck.  In the bed of the truck, there was a rectangular object that looked like boxes, covered by a tarp.  In Kansas, Gillett informed two of his friends that he had taken the truck from its owners, that he had killed the owners, and that the owners were in the back of the truck.  One of the friends to whom Gillett confessed soon thereafter went to the Gillett farm and observed in one of the farm's sheds a freezer that, according to him, looked like what might have been under the tarp in the back of the white pickup truck that Gillett had been driving.  At the trial, Hulett's

mother identified the freezer found at the farm to be the freezer that belonged to Hulett and Heintzelman, and she stated that she had last seen the freezer at Hulett's and Heintzelman's residence in Hattiesburg.  Further, a KBI forensic scientist found Gillett's fingerprints on the freezer, as well as on both the "sticky" and "shiny" sides of the tape that bound the freezer shut.

The pathologist who conducted the autopsies of Hulett and Heintzelman found Heintzelman to have suffered at least sixty-nine separate injuries prior to death, including injuries caused by blunt-force trauma, cutting, stabbing, and suffocation.  The pathologist summarized:

> Ms. Linda Heintzelman died from the multiple injuries that were inflicted upon her. Those included sharp-force injuries predominantly to the torso. Those included blunt-force injuries predominantly to the head. There were also sharp-force injuries to the neck. And there was also a component of asphyxiation or lack of oxygen getting into the airway.

The pathologist found Hulett to have suffered numerous injuries as well, predominantly to his face and head.  The pathologist concluded that Hulett's death was the result of "blows that went to the left side of the head [,] fractured the skull and then damaged the brain."  Hulett was found in the freezer, and presented to the pathologist, with his arms severed at the shoulder joints and his head severed at the neck.

On November 2, 2007, Petitioner was convicted of two counts of capital murder. ([9-7] at 97-98).  On November 5, 2007, Petitioner was sentenced to death. ([9-7] at 99-102).

Thereafter, Petitioner, through counsel, appealed his conviction and sentence to the Mississippi Supreme Court, raising the following grounds for relief:

1. The trial court erred in denying the motion to suppress the warrantless arrest of Mr. Gillett and seizures incident thereto.

2. Because Mr. Gillett never waived his Miranda rights the trial court erred in denying suppression of Mr. Gillett's custodial statement and erred in denying

suppression of that portion of the custodial statement extracted after Mr. Gillett coincidentally invoke his right to counsel.

3. The trial court erred in denying Mr. Gillett's motion to suppress direct and derivative seizures from a warranted search at 606 North Ash Street, City of Russell.

4. The trial court erred in denying Mr. Gillett's motion to suppress direct and derivative seizures from a warranted search at 5482 190th Street, County of Russell.

5. Count Two of the indictment, charging the capital murder of Vernon Hulett, should not have proceeded to the jury.

   5(A): Therefore, it was reversible error to overrule Mr. Gillett's motion for a directed verdict on Count Two and Jury Instruction D-72, the peremptory instruction on Count Two, and Mr. Gillett's motion for judgment notwithstanding the verdict.

   5(B): Because Count Two should not have gone to Mr. Gillett's jury, the verdict of guilty as charged on Count Two is legally insufficient and cannot stand. Claim

   5(C): Because Mr. Gillett's conviction as charged under Count Two is legally insufficient, the death sentence for this conviction must be vacated.

6. Entirely because Count Two was legally insufficient for reasons stated in Claim 5, the death sentence for the conviction under Count One must also be vacated as it is premised on inadmissible evidence of bad character.

7. Mr. Gillett's objections to jury instructions S-5 and S-6 should have been sustained. It was reversible error to include jury instructions S-5 and S-6 in the jury charge.

8. Permitting expert opinion concerning DNA results over Mr. Gillett's Daubert objection was reversible error.

9. The trial court committed reversible error in refusing Jury Instructions D-42, D-44 and D-45, individually and collectively. In doing so, the trial court excluded Mr. Gillett's theory of defense from the jury charge.

10. The trial court erred in refusing to include Jury Instructions D-53 and D-60, Mr. Gillett's lesser-included instructions, in the jury charge.

11. The trial court erred in refusing to include Jury Instruction D-19 in the jury charge.

12. The trial court erred in refusing to include Jury Instruction D-25 in the jury charge.

13. The trial court erred in refusing to include Jury Instruction D-41 in the jury charge.

14. The trial court erred in refusing to include Jury Instruction D-20 in the jury charge.

15. The convictions must be reversed as the State never satisfactorily established venue.

16. The trial court erred in overruling Mr. Gillett's objection to inadmissible source hearsay.

17. Mr. Gillett's convictions are unsupported by the evidence adduced at trial and are against the overwhelming weight of the evidence.

18. The trial court erred in overruling Mr. Gillett's objection to the Miss. Code Ann. 99-19-101(5)(E) aggravator. Therefore, it was error to include the "avoiding arrest" aggravator in Jury Instruction S-5-S and Jury Instruction S-6-S.

19. The trial court erred in overruling Mr. Gillett's objection to the Miss. Code Ann. 99-19-101(5)(B) aggravator. Therefore, it was error to include the "previous violent felony" aggravator in Jury Instruction S-5-S and Jury Instruction S-6-S.

20. The trial court erred in giving Jury Instruction S-4-S as the instruction insufficiently limited the Miss. Code Ann. 99-19-101(5)(H) aggravator.

21. The "felony murder" aggravator at Miss. Code Ann. 99-19-101(5)(D) in this case is unconstitutionally duplicative and the trial court erred in submitting it to the jury. In light of this, as well as Claim 18, 19 and 20, no lawful aggravator exists and the death sentences must be vacated.

22. The trial court "charged out" Mr. Gillett at the penalty phase when the trial court denied the totality of Mr. Gillett's theory of defense instructions; namely Jury Instructions DA-30, DA-31, DA-49, DA50, DA-51, DA-52, DA-53, DA-54, DA-55, DA-56 and DA-59.

23. The trial court erred in giving jury instructions S-1-S and erred in refusing to give Jury Instruction DA-61.

24. The trial court erred in giving contradictory instructions on the independent duty of each juror to consider mitigation and, potentially at least, vote life. The

trial court then compounded this error in refusing to give instructions submitted by Mr. Gillett that may have remedied this unlawful incongruity.

25. The trial court erred in refusing to include Jury Instruction DA-13, Mr. Gillett's instruction that the death penalty is never required in the State of Mississippi in the jury charge.

26. The trial court erred in refusing any and all of Mr. Gillett's "presumption of life" instructions.

27. The trial court erred in refusing to include Instructions DA-66 and DA-67, Mr. Gillett's instructions advising his jury on the consequences of the jury's failure to unanimously agree on a sentence, in the jury charge.

28. The trial court erred in refusing to include Instruction DA-5 and DA63 in its charge to the jury.

29. The trial court erred in refusing to include Instruction DA-38, Mr. Gillett's Marsh Instruction in the jury charge.

30. Forensic misconduct occurring during first-phase summation and second-phase summation requires the convictions to be reversed and the sentences to be vacated.

31. Autopsy photos introduced at trial and at the penalty phase were unduly prejudicial and require appellate relief.

32. In light of all previous claims, Mr. Gillett's death sentences are the product of an invalid penalty phase. As the State has failed to demonstrate that death is the appropriate sentence, the execution of Mr. Gillett shall violate his Eighth and Fourteenth Amendment Rights and his Article Three, Section Twenty-Eight Rights.

33. Pursuant to Miss. Code Ann. 99-19-105(3)(a) and the constitutional prohibition against the arbitrary infliction of the death sentence, Mr. Gillett's sentence must be vacated.

34. Pursuant to Miss. Code Ann. 99-19-105(3)(c), Mr. Gillett's death sentence is excessive and disproportionate.

35. The aggregate error in this case requires reversal of the convictions and death sentences as a matter of federal constitutional law.

36. The aggregate error in this case requires reversal of conviction and death sentence as a matter of state law.

37. Miss. Code Ann. 99-19-101 is facially unconstitutional.

([9-25] at 19-25).  On July 1, 2010, the Mississippi Supreme Court affirmed Petitioner's

conviction in a written opinion.  *See Gillett v. State*, 56 So. 3d 469 (Miss. 2010).

On April 5, 2012, Petitioner sought leave from the Mississippi Supreme Court to file his

motion for post-conviction collateral relief in the trial court in which he asserted the following

grounds for relief:

1. Trial counsel's appaling [sic] failure to investigate Mr. Gillett's background deprived him of right to effective assistance of counsel under the United States and Mississippi Constitutions.

2. The failure of Mr. Gillett's counsel to object to prosecutorial misconduct during the penalty phase of his capital trial constitutes ineffective assistance of counsel under the United States and Mississippi Constitutions.

3. The underlying aggravator of robbery was improperly expanded by the trial court and this Court in violation of Mr. Gillett's constitutional rights.

4. The trial court's instructions and this Court's affirmance of Mr. Gillett's conviction under the continuous action doctrine violate Mr. Gillett[']s rights under the United States and Mississippi Constitutions because, in this case, they failed to provide the constitutionally required fair notice.

5. This Court's re-weighing of the aggravating and mitigating factors violates Mr. Gillett's due process rights under the United States and Mississippi Constitutions.

6. Mr. Gillett's Eighth and Fourteenth Amendment rights were violated when he was required to appear before the jury in the modern-day equivalent of shackles.

7. Although these issues standing alone warrant relief, the cumulative errors present in Mr. Gillett's case denies his constitutionally-guaranteed rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

([10-1] at 7-148).

On June 12, 2014, the Mississippi Supreme Court granted in part and denied in part

Petitioner's post-conviction collateral relief motion. *See Gillett v. State*, 148 So. 3d 260 (Miss.

2014).  The supreme court organized Petitioner's grounds for relief into the following six issues:

1. The underlying capital-murder aggravator of robbery was improperly expanded;

2. Conviction of capital murder under the "continuous-action doctrine" was unconstitutional, as Gillett was not given required fair notice;

3. Gillett's trial counsel were ineffective in failing to investigate Gillett's background and to present an adequate mitigation case;

4. Gillett's trial counsel were ineffective in failing to object to prosecutorial misconduct during the sentencing portion of his trial;

5. Gillett's due-process rights were violated when the Mississippi Supreme Court reweighed the aggravating and mitigating factors; and,

6. Cumulative error.

*Id.* at 261-62.

The supreme court held that issues one and two were barred by *res judicata* as they were raised and addressed on direct appeal and that these issues were without merit. *Id.* at 263. The court, however, held that Petitioner's due process rights were abridged during sentencing, vacated his death sentences, and remanded his case to the trial court for resentencing. *Id.* at 262. Because the court vacated Petitioner's sentence based on issue five, the court did not address issues three, four, or six. *Id.* On remand, the trial court sentenced Petitioner to life imprisonment without the benefit of parole for both counts of capital murder. ([8-3]).

On March 27, 2019, Petitioner filed the instant Petition for Writ of Habeas Corpus [1], asserting the following grounds for relief (as stated by Petitioner who was proceeding *pro se*):

1. My due process rights were violated when the Mississippi Supreme Court chose not to even consider the numerous claims I raised regarding the search warrants in my case. The court's choice denied me a full and fair opportunity to litigate these issues. Due process requires more than "denied" to adjudicate the numerous claims I raised.

My constitutional rights were further violated when my trial court, and then the Mississippi Supreme Court, failed to suppress direct and derivative seizures from "warranted" searches at 606 N. Ash St. Russell, KS and 5482 190th St. Russell Co., KS. The Mississippi Supreme Court reached their decision based on an

unreasonable determination of the facts in light of the evidence presented and misapplied and disregarded clearly established federal law.

2. The misuse of the "continuous action doctrine" by the State of Mississippi is a clear violation of my due process rights as set forth in the United States Constitution.

On June 24, 2019, Respondent filed a Response [8] opposing the Petition, and on July 24, 2019, Petitioner, while proceeding *pro se*, filed a Reply [12]. On June 17, 2020, counsel entered an appearance on behalf of Petitioner, and on August 20, 2020, Petitioner filed a Motion for Leave to File Brief [18], seeking leave to "file a brief on his constitutional claims with the benefit of counsel." The Court granted the Motion [18], allowing Petitioner to file a brief "limited to the issues raised in the original Petition [1]." *See* Order [20]. On January 2, 2021, Petitioner, through counsel, filed a Brief [26] in support of his Petition, and on February 10, 2021, Respondent filed a Response [29]. On February 24, 2021, after the Court granted him leave to do so, Petitioner, through counsel, filed a Reply [32].

## ANALYSIS

The standard of review for habeas claims to be applied by this Court is set forth in 28 U.S.C. § 2254(d), which provides that a federal court may not grant habeas relief unless the state court's adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

The "contrary to" clause applies when the state court fails to apply a legal rule announced by the Supreme Court or reaches a result opposite to a previous decision of the Court on

materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The "unreasonable application" clause applies when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id*. at 407-08. The "unreasonable application" inquiry is based on an objective standard, and "unreasonable" does not equate with "incorrect." *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004).

Habeas corpus serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations omitted). A federal court does not "sit as a 'super' state supreme court" and may decide the issues presented by the habeas petition "only to the extent that federal constitutional issues are implicated." *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986).

### *Issue 1: Search Warrants*

Petitioner asserts that two search warrants (one to search the residence where he was staying in Russell, Kansas and another to search the Gillett farm in Russell County, Kansas) were obtained in violation of his constitutional rights. Petitioner argues that the trial court and Mississippi Supreme Court should have suppressed the evidence obtained during these searches. Petitioner further argues that the Mississippi Supreme Court failed to properly consider his claims challenging the search warrants.[2]

The Fourth Amendment protects people from unreasonable searches and seizures. It is well settled, however, that Fourth Amendment claims are generally not cognizable on federal

---

[2] Petitioner raised these arguments in his Petition [1]. In his supplemental Brief [26] filed through counsel, Petitioner states that he "stands on his original submissions with regard to Claim 1. While Petitioner maintains that the search and seizure rulings were incorrect, because of the deference given to state courts under AEDPA he chooses to focus his brief on Claim 2 of the Petition." ([26] at 23).

habeas review.  In *Stone v. Powell*, the United States Supreme Court held that "where the state has provided an opportunity for full and fair consideration of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at trial." 428 U.S. 465, 494 (1976).  "This preclusion on federal courts to grant habeas relief based on a fourth amendment violation acts as a bar to such relief 'absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review.'" *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986) (quoting *Stone*, 428 U.S. at 494 n. 37).

Opportunity for full and fair litigation means just that: an opportunity. *See Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002).  "The opportunity to present a fourth amendment claim to the state trial and appellate courts, whether or not that opportunity is exercised or proves successful, constitutes 'an opportunity for full and fair consideration' of a defendant's fourth amendment claim under *Stone* absent sufficient factual allegations and proof that the state process is 'routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits.'" *Smith v. Maggio*, 664 F.2d 109, 111 (5th Cir. 1981) (quoting *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980)).  Petitioner bears the burden of proving the denial of full and fair litigation in state court. *Davis*, 803 F.2d at 1372.

Petitioner takes issue with the consideration the state courts afforded his Fourth Amendment claims, arguing that the state courts failed to sufficiently address the merits of his claims.  The record, however, demonstrates that the state courts provided Petitioner with sufficient opportunity for full and fair litigation of his claims.

First, during pretrial proceedings, Petitioner filed motions to suppress the evidence seized during the subject searches. ([9-1] at 98-116).  The trial court conducted hearings, heard witness

testimony, and eventually denied the motions. ([9-11] at 26; [9-14] at 464).  Second, Petitioner presented his Fourth Amendment claims to the Mississippi Supreme Court on direct appeal.  The supreme court specifically addressed the following issues: "whether the trial court erred in denying Gillett's motion to suppress seizures from the warranted search of 606 North Ash Street" and "whether the trial court erred in denying Gillett's motion to suppress evidence of the warranted search of 5482 190th Street." *Gillett*, 56 So.3d at 486-91.  The Mississippi Supreme Court issued thorough, legally-supported opinions on these issues. *Id*.

The state courts provided Petitioner sufficient opportunities for full and fair litigation of his claims.  The fact that Petitioner disagrees with the state courts' decisions is not sufficient to overcome the *Stone* bar. *See Janecka*, 301 F.3d at 320.  Moreover, Petitioner has failed to demonstrate that Mississippi courts "routinely or systematically" apply state processes in such a way as to prevent the actual litigation of Fourth Amendment claims. *Id*.; *Williams*, 609 F.2d at 220 (holding that the *Stone* bar applied even though state court refused to review a Fourth Amendment claim based on the erroneous belief that it had already been raised and addressed).  Therefore, Petitioner's first ground for relief is barred from federal review by *Stone* and should be dismissed.

### Issue 2: Underlying Felony of Robbery

As previously discussed, Petitioner was convicted of two counts of capital murder.  The crime of capital murder is codified by Miss. Code Ann. § 97-3-19, which provides, in pertinent part, as follows:

> (2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
> . . .
>
> (e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson, robbery, sexual

battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or in any attempt to commit such felonies . . . .

Miss. Code. Ann. § 97-3-19(2)(e).

Petitioner was charged with killing Hulett and Heintzelman "while in the commission of the crime and felony of Robbery, as defined by Section 97-3-73, Mississippi Code of 1972 . . . ." ([9-1] at 21). Section 97-3-73 provides that: "Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear or some immediate injury to his person, shall be guilty of robbery." At trial, the prosecution argued that the object of the robbery was Heintzelman's Dodge truck. ([9-21] at 91-92).

On direct appeal, Petitioner argued that the trial court erred in allowing jury instruction S-5 and S-6 because the instructions did not require the jury to conclude that the intent to rob the victims was formed before the victims died.[3] Petitioner noted that Hulett and Heintzelman were

_____

[3] Jury instruction S-5 states:

> The Court instructs the Jury that in a case of Capital Murder the fact that the victim was dead at the time of taking her personal property does not mitigate against the conclusion of the robbery. If the intervening time between the murder, if any, and the time of the taking of the property, if any, formed a continuous chain of events, the fact that the victim was dead when the property was taken cannot absolve the Defendant from the crime.

> If you should find from the evidence in this case beyond a reasonable doubt that Roger Lee Gillett, alone or in conjunction with another, killed and murdered Linda Heintzelman and then, after the said Linda Heintzelman was dead, took the personal property of Linda Heintzelman; and if you should further find beyond a reasonable doubt that the intervening time between the time of the murder, if any, and the time of the taking of property, if any, formed a continuous chain of events, the fact that Linda Heintzelman was dead when the property was taken does not absolve the Defendant from the crime of capital Murder in Count I.

15

killed multiple days before he took the truck from Hulett's house.  The Mississippi Supreme

Court rejected this argument, holding as follows:

> Mississippi follows the "one-continuous-transaction" rationale in capital cases.  In other words, "where the two crimes [e.g. murder and robbery] are connected in a chain of events and occur as part of the res gestae, the crime of capital murder is sustained. *Pickle v. State*, 345 So.2d 623, 627.  "An indictment charging a killing occurring 'while engaged in the commission of' one of the enumerated felonies includes the actions of the defendant leading up to the felony, the attempted felony, and flight from the scene of the felony." *Turner v. State*, 732 So.2d 937, 950 (Miss. 1999) (quoting *West v. State*, 553 So.2d 8, 13 (Miss. 1989)).

> Moreover, this Court specifically has found that the intent to rob, which is required to prove the underlying felony of robbery, can be shown from the facts surrounding the crime. (*Walker v. State*, 913 So.2d 198, 224 (Miss. 2005); *Linch v. State*, 877 So.2d 1254, 1266 (Miss. 2004)).

*Gillett*, 56 So.3d at 492 (brackets in original).

In this Court, Petitioner raises two arguments challenging his capital murder convictions.

First, Petitioner argues that the one-continuous-transaction rationale utilized by the Mississippi

Supreme Court violates the Due Process Clause by "enlarg[ing] two loosely connected events

into the ultimate crime of capital murder."  Second, Petitioner argues that the evidence was

legally insufficient to support his capital murder conviction.

One-Continuous-Transaction Doctrine

Petitioner argues that the Mississippi Supreme Court's application of the one-continuous-

transaction rationale violated his due process rights because it amounted to judicial enlargement

of a criminal statute and deprived him of fair warning that his conduct could constitute capital

murder.  Petitioner's argument is founded on the United States Supreme Court's decision in

*Bouie v. City of Columbia*, 378 U.S. 347 (1964).

---

([9-6] at 135).  Jury instruction S-6 is nearly identical to S-5, aside from the substitution of Vernon Hulett's name as the murder victim. ([9-6] at 136).

In *Bouie*, the Supreme Court acknowledged the "basic principle that a criminal statute must give fair warning of the conduct that it makes a crime." 378 U.S. at 350. The Court held that a South Carolina court's construction of a statute was an impermissible retroactive expansion of the law because "it was so clearly at odds with the statute's plain language and had no support in prior South Carolina decisions." *Rogers v. Tennessee*, 532 U.S. 451, 457-58 (2001) (citing *Bouie*, 378 U.S. at 356).[4]

A state supreme court's construction violates due process only where is it "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Bouie*, 378 U.S. at 354 (internal quotation marks omitted); *see also Hayes v. Woodford*, 301 F.3d 1054, 1088 (9th Cir. 2002) ("To violate due process, the construction given the statute by the state court must have been a radical and unforeseen departure from prior law."); *United States v. Killion*, 30 F.3d 844, 846 (7th Cir. 1994) ("*Bouie* applies only to unpredictable shifts in the law, not to the resolution of uncertainty that marks any evolving legal system."). This "accords common law courts the substantial leeway they must enjoy as they engage in the daily task of formulating and passing upon criminal defenses and interpreting such doctrines as causation and intent, reevaluating and refining them as may be necessary to bring the common law into conformity with logic and common sense." *Rogers*, 532 U.S. at 461-62. "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant

_____

[4] The South Carolina statute at issue in *Bouie* prohibited "entry upon the lands of another . . . after notice from the owner or tenant prohibiting such entry . . . ." *Bouie*, 378 U.S. at 349, n.1. The South Carolina court construed the statute to extend to patrons of a drug store who had received no notice prohibiting their entry into the store, but had refused to leave the store when asked. Prior to the court's decision, South Carolina cases construing the statute had uniformly held that conviction under the statute required proof of notice before entry. None of those cases had given the "slightest indication that that requirement could be satisfied by proof of the different act of remaining on the land after being told to leave." *Id*. at 357.

time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

The Mississippi Supreme Court's application of the one-continuous-transaction rationale to this case was not unexpected and indefensible.  In 1977, the Mississippi Supreme Court, in *Pickle v. State*, held that "where two crimes are connected in a chain of events and occur as part of the res gestae, the crime of capital murder is sustained." 345 So. 2d 623, 627 (Miss. 1977). Later, the Mississippi Supreme Court held that "the fact that the murder occurred prior to the taking does not lessen the crime," noting that "'[i]f the intervening time between the time of the murder and the time of taking of the property formed a continuous chain of events, the fact that [the victim] was dead when he took the property could not absolve the defendant from the crime of robbery." *West v. State*, 463 So. 2d 1048, 1055-56 (Miss. 1985).  In another case, the court held that "[t]he fact that the actual moment of the victim's death preceded consummation of the underlying felony does not vitiate the capital charge." *West v. State*, 553 So. 2d 8, 13 (Miss. 1989); *see also Duplantis v. State*, 708 So. 2d 1327, 1342 (Miss. 1998) ("the possibility that the precise moment of [the victim's] death may have preceded the actual consummation of the robbery does not vitiate the capital charge.").

The Mississippi Supreme Court's application of the one-continuous-transaction rationale in this case was supported by precedent.  Even if this case presented novel facts, considering the intervening time between the murder and the taking of property, the court's decision was neither unexpected nor indefensible and, thus, does not constitute an impermissible modification of substantive criminal law in violation of *Bouie.*  Accordingly, Petitioner has not demonstrated that the Mississippi Supreme Court's decision on this issue is contrary to, or involves an

unreasonable application of, clearly established federal law.  Habeas relief on this issue should be denied.

Sufficiency of the Evidence

Finally, Petitioner argues that, even if the application of the one-continuous-transaction rationale does not violate the Due Process Clause in general, the Mississippi Supreme Court's application of the rationale in this case involved an unreasonable determination of facts in light of the evidence presented.  According to Petitioner, "there is zero evidence that the taking of the truck was any sort of continuation of the killings." ([26] at 31).[5]

The United States Supreme Court set forth the standard for an insufficiency of the evidence claim in *Jackson v. Virginia*, 443 U.S. 307 (1979).  Insufficiency of the evidence can support a claim for habeas relief only if the evidence, when viewed in the light most favorable to the State, is such that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001).  The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997).  Additionally,

---

[5] Respondent argues that the Court should not consider Petitioner's challenge to the sufficiency of the evidence because Petitioner first raised the issue in his reply brief.  In the absence of manifest injustice, courts need not consider claims which were raised for the first time in a reply brief. *See United States v. Sangs*, 31 Fed. Appx. 152 (5th Cir. 2001); *Hopper v. Dretke*, 106 Fed. Appx. 221, 228 n.25 (5th Cir. 2004); *Mermikwu v. Gonzales*, 2007 WL 530228, at *1 (N.D. Tex. Feb. 21, 2007).  For his part, Petitioner argues that he raised this issue in his Petition [1], citing the following statement: "There is absolutely no proven connection between the homicides and so-called robbery which the State used to elevate this to a capital offense." *See* [1] at 19.  The undersigned finds that the Petition, read liberally, provided notice that Petitioner is challenging the sufficiency of the evidence.

where a state appellate court has reviewed the sufficiency of the evidence, the state court's

determination is entitled to great deference. *See Callins v. Collins*, 998 F.2d 269, 276 (5th Cir.

1993) (citing *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985)).  "[A] federal court may

not overturn a state court decision rejecting a sufficiency of the evidence challenge simply

because the federal court disagrees with the state court [but, instead,] may do so only if the state

court decision was objectively unreasonable." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

Petitioner focuses on the length of time and intervening events between the murders of

Hulett and Heintzelman and the taking of Heintzelman's truck.  Hulett and Heintzelman were

last seen alive on March 19, 2004, and Petitioner's indictment alleged that he killed the victims

on or about March 20, 2004. ([9-1] at 21; [9-18] at 15-16).  On March 21, 2004, Petitioner and

Chamberlin walked to the home of Caroline Hester, Hulett's mother. ([9-17] at 128; [9-18] at

18).  Then, on March 23, 2004, Petitioner and Chamberlin again walked to Caroline Hester's

home. ([9-17] at 130; [9-18] at 18-19).  Petitioner points out that he did not arrive in Kansas,

with Heintzelman's truck, until March 26, 2004.

According to Petitioner, the evidence demonstrates that Hulett and Heintzelman were

killed on either March 19 or March 20 and that he did not take the truck from Hulett's house

until March 24[6] or March 25.  Petitioner asserts that there is no evidence of Petitioner using the

truck before he left for Kansas on March 24 or March 25.  Petitioner argues that to conclude that

the taking of the truck was a continuous chain of events from killings that happened three to six

days before is an unreasonable factual determination.

---

[6] Petitioner points to evidence indicating Petitioner remained in Hulett's house at least until
March 24, 2004, such as mail found inside Hulett's house which was dated March 24, 2004, and
a calendar found in the house that had the dates March 1 through March 24 marked with a slash.
([9-27] at 76-77; [9-26] at 47).

The Mississippi Supreme Court addressed this issue, concluding that Petitioner's convictions were based on sufficient evidence. The court noted that the "intent to rob, which is required to prove the underlying felony of robbery, can be shown from the facts surrounding the crime." *Gillett*, 56 So. 3d at 492. The court also noted that "when the defendant is discovered with the personal property of the deceased on his person, it is entirely within reason for the jury to find that this fact in itself constitutes robbery." *Id*. Addressing the evidence in this case, the court stated as follows:

> In addition to the physical evidence the State introduced at trial, the State presented a witness who testified that Gillett had confessed to him that he, Gillett, had taken the white pickup truck he was driving from its owners and that he had murdered them. Another witness testified that Gillett had confessed to her that he needed to get rid of the white pickup truck he was driving because two bodies were in the back of the truck.

*Id*. at 505. The court noted the standard set forth in *Jackson v. Virginia*[7] and concluded that a "rational trier of fact could have found the essential elements of the crime of capital murder beyond a reasonable doubt." *Id*. at 504-05.

The record confirms the supreme court's description of the evidence. Ronnie Burns testified that Petitioner admitted he had taken the truck from the owners, who were dead and in the back of the truck. ([9-18] at 41-42). Laray Crumbless testified that Petitioner stated he needed help getting rid of the truck due to the bodies in the back. ([9-18] at 66-67). Respondent also points out that Caroline Hester, Hulett's mother, testified that Petitioner was "very angry" at Heintzelman because she wrecked Chamberlin's car. ([9-17] at 126-27). According to Hester,

---

[7] The court specifically stated that "this Court asks whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 504 (internal quotations and citations omitted).

Petitioner stated that "he would like to take Linda [Heintzelman] and push her through a plate glass window." ([9-17] at 127).

This Court may not try Petitioner's state criminal case *de novo*, reweigh the evidence, or substitute its own judgment for that of the trier of fact, but must determine whether a rational jury could have found beyond a reasonable doubt that Petitioner was guilty. The evidence in this case, when viewed in the light most favorable to the State, is not such that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Santellan*, 271 F.3d at 193. Petitioner cites to a dissent by one of the Mississippi Supreme Court Justices, who concluded that the State failed to prove capital murder because "there was a clear break between the killings and the taking of the truck." *Gillett*, 56 So.3d at 532. This Court, however, must give the supreme court's majority opinion great deference. *See Callins*, 998 F.2d at 276. The supreme court found that there was sufficient evidence to support Petitioner's conviction. The undersigned finds that Petitioner has not established that the supreme court's decision on this issue is contrary to, or involves an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence. Habeas relief on this claim should be denied.

## RECOMMENDATION

For the reasons stated above, the undersigned recommends that the relief sought in Roger Lee Gillett's Petition for Writ of Habeas Corpus [1] be denied and that the Petition be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the

recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 29th day of April, 2021.

s/Michael T. Parker
UNITED STATES MAGISTRATE JUDGE