**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**ROGER LEE GILLETT**                                                              **PLAINTIFF**

**V.**                                             **CIVIL ACTION NO. 2:19-cv-44-TBM-MTP**

**PELICIA HALL**, *Commissioner*
*of Mississippi Department of*
*Corrections*                                                              **DEFENDANT**

**ORDER ADOPTING REPORT AND RECOMMENDATION**
**AND DISMISSING PETITION FOR WRIT OF HABEAS CORPUS**

Vernon Hulett and Linda Heintzelman welcomed Roger Gillett to Mississippi by letting Gillett stay at their house; Gillett rewarded their hospitality by brutally murdering Hulett and Heintzelman and stealing Heintzelman's truck. After killing the victims, Gillett remained at Hulett and Heintzelman's home for at least three days until he hid their bodies in the truck and drove to Kansas. Gillett was convicted of two counts of capital murder. The theft of the truck was determined to be a robbery that served as the underlying felony for capital murder. Gillett seeks habeas relief, arguing that the three-day gap between the time he killed the victims and when he drove away in Heintzelman's truck precludes a finding that the robbery occurred during the commission of the murders. He also complains of the analytical framework employed by the Magistrate Judge in the Report and Recommendation. In denying habeas relief, the Court finds that the Magistrate Judge utilized the correct legal standard, the state court's application of the one-continuous transaction doctrine does not present a cognizable claim, and sufficient evidence exists to find that Gillett killed the victims during the commission of the robbery.

# I. FACTUAL BACKGROUND

The following factual summary is taken from the Mississippi Supreme Court's opinion affirming Gillett's conviction. *Gillett v. State*, 56 So. 3d 469, 476-479 (Miss. 2010). On March 29, 2004, Roger Gillett's aunt informed a sheriff's department in Kansas that Gillett had manufactured illegal narcotics at his grandfather's farm in rural Kansas and also stored a stolen pickup truck there. That same day, Kansas state authorities obtained a warrant to search the farm. In a metal shed at the farm, officers located a white pickup truck that was found to be registered to Linda Heintzelman (Vernon Hulett's live-in companion), as well as items consistent with the manufacture of methamphetamine. In a wooden shed at the farm, officers located a freezer that was bound shut with duct and electrical tape. Officers discovered Heintzelman and Hulett's remains inside. Gillett and his codefendant Lisa Chamberlin were arrested.

Chamberlin gave officers a statement and led them to a location in a local landfill where, according to her, she and Gillett had disposed of trash bags containing property associated with the murder victims. Trash bags that the officers collected from the landfill contained Hulett's and Heintzelman's wallets containing their drivers licenses, Hulett's work shirt and work pants, both with his name printed on them, a crocheted pillow appearing to have blood on it (later found to match other pillows on Hulett's and Heintzelman's bed in their Hattiesburg, Mississippi home), a Hattiesburg phone book, and a pair of New Balance tennis shoes with blood on them.

Based on the evidence recovered, the Kansas officers contacted the Hattiesburg police and asked them to check the Hattiesburg residence shared by Hulett and Heintzelman. Hattiesburg officers subsequently searched the residence and found carpeting removed from the floor and rolled up, multiple blood-like stains throughout the house, a pried-open safe, and a shoe print in a

2

reddish stain. The Mississippi Crime Laboratory determined that one of the New Balance shoes recovered from the garbage bags at the Kansas landfill was the source of the shoe print found in Hulett and Heintzelman's home. The Mississippi Crime Laboratory also determined that blood on the shoe was Linda Heintzelman's blood.

At trial, it was revealed that Gillett and Chamberlin had driven a blue Mitsubishi Eclipse from Kansas to Mississippi around the end of February 2004, and had been staying at Hulett and Heintzelman's home. One day, while Gillett, Chamberlin, Hulett, and Heintzelman were on their way to the Mississippi Gulf Coast, with the couples driving their respective vehicles, Chamberlin's and Gillett's Mitsubishi was damaged in a wreck. The wreck was allegedly caused by Heintzelman cutting them off and forcing them into a ditch. Gillett was very angry about the car wreck, even telling Hulett's mother after the wreck that he would like to take Heintzelman and push her through a plate-glass window.

The last time anyone saw Hulett and Heintzelman alive was on March 19, 2004. When Hulett's nephew came by Hulett's house on March 20, he found only Gillett and Chamberlin there. Gillett told the nephew that Hulett and Heintzelman had gone to the Gulf Coast with a friend. Similarly, when the nephew stopped by Hulett's house on March 21, he found only Gillett and Chamberlin there. While visiting with Gillett and Chamberlin that day (March 21), the nephew noticed that the carpeting had been ripped up, and when he inquired about it, Gillett told him that Hulett had asked him to rip it up because Hulett had come into some money and was bringing new carpeting back with him from the Gulf Coast. The nephew also saw Gillett and Chamberlin in Hattiesburg on March 23.

Shortly thereafter, Gillett and Chamberlin arrived in Kansas, driving Heintzelman's white pickup truck. In Kansas, Gillett informed two of his friends that he had taken the truck from its owners, that he had killed the owners, and that the owners were in the back of the truck. At the trial, Hulett's mother identified the freezer found at the farm to be the freezer that belonged to Hulett and Heintzelman, and she stated that she had last seen the freezer at Hulett's and Heintzelman's residence in Hattiesburg.

The pathologist who conducted the autopsies of Hulett and Heintzelman found Heintzelman to have suffered at least sixty-nine separate injuries prior to death, including injuries caused by blunt-force trauma, cutting, stabbing, and suffocation. The pathologist found Hulett to have suffered numerous injuries as well, predominantly to his face and head. The pathologist concluded that Hulett's death was the result of "blows that went to the left side of the head[,] fractured the skull and then damaged the brain."

## II. PROCEDURAL HISTORY

Gillett was tried and convicted of two counts of capital murder on November 2, 2007. He was sentenced to death. He directly appealed to the Mississippi Supreme Court, who—in an opinion authored by then Presiding Justice James E. Graves, Jr.—affirmed the conviction and sentence. *Gillett*, 56 So. 3d at 525. Justice Kitchens dissented, arguing that the State failed to prove that Gillett murdered the victims "during the commission of" a robbery and finding errors in the sentencing phase of the trial. *Id.* at 529-34. Gillett then filed for state post-conviction relief. The Mississippi Supreme Court again affirmed Gillett's underlying conviction, but vacated Gillett's sentence. *Gillett v. State*, 148 So. 3d 260, 269 (Miss. 2014). Gillett was re-sentenced to life without the possibility of parole for both counts of capital murder.

4

Gillett then filed his Petition for Writ of Habeas Corpus [1] in this Court pursuant to 28 U.S.C § 2254. Proceeding *pro se*, he raised two broad grounds for relief: (1) constitutional errors involving the search and seizures conducted by the authorities investigating the case and (2) constitutional errors stemming from the Mississippi Supreme Courts' application of the one-continuous transaction doctrine to the facts of his case. Later, Gillett obtained counsel. [13]. The Court authorized Gillett's attorney to file supplemental briefing. [17]. In his supplemental brief, Gillett stated that "he stands on his original submissions with regard to Claim 1 [regarding the search and seizures]. While Petitioner maintains that the search and seizure rulings were incorrect, because of the deference given to state courts under AEDPA he chooses to focus his brief on Claim 2 of the Petition [regarding the one-continuous transaction doctrine]." [26], pg. 23.

Magistrate Judge Michael T. Parker entered a Report and Recommendation [33] finding that Gillett's claims should be denied. Gillett filed Objections [34]. Gillett did not object to Magistrate Judge Parker's recommendation that his Fourth Amendment search and seizure claim be dismissed. Instead, he raised three other objections. First, he argues that Magistrate Judge Parker did not apply the correct legal framework under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Second, he contends that Magistrate Judge Parker failed to fully address his constitutional arguments surrounding the Mississippi Supreme Court's use of the one-continuous transaction doctrine. Finally, he claims that Magistrate Judge Parker erred in giving too much deference to the state court in analyzing his sufficiency of the evidence arguments.

### III. STANDARD OF REVIEW

It is well-settled that "[p]arties filing objections must specifically identify those findings objected to." *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (alteration in original)

(quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). The Court must review any objected-to portions of a report and recommendation *de novo*. Such a review means that the Court will consider the record that has been developed before the Magistrate Judge and make its own determination on the basis of that record. *United States v. Raddatz*, 447 U.S. 667, 675, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980). The Court need not consider frivolous, conclusive, or general objections. *Johansson v. King*, No. 5:14-cv-96-DCB, 2015 WL 5089782, at *2 (S.D. Miss. Aug. 27, 2015) (citing *Battle*, 834 F.2d at 421). Additionally, "[m]erely reurging the allegations in the petition or attacking the underlying conviction is insufficient to receive *de novo* review." *Id.* When a *de novo* review is not warranted, the Court need only review the findings and recommendation and determine whether they are either clearly erroneous or contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).

A writ of habeas corpus by a state prisoner who has exhausted his state-law remedies will only be granted if the state court's adjudication of the merits of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court's decision is contrary to clearly established federal law if it 'applies a rule that contradicts the governing law set forth' in Supreme Court cases or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent.'" *Fields v. Thaler*, 588 F.3d 270, 273 (5th Cir. 2009) (alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). "A state court's decision

constitutes an 'unreasonable application' of clearly established Federal law, as determined by the Supreme Court, if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Horn v. Quarterman*, 508 F.3d 306, 312 (5th Cir. 2007) (alteration in original) (internal quotations omitted). "[T]he state court's factual findings are 'presumed to be correct' unless the applicant rebuts this presumption with 'clear and convincing evidence.'" *Vollmer v. Davis*, 673 F. App'x 406, 410 (5th Cir. 2016) (quoting 28 U.S.C. § 2254(e)(1)).

Courts may not use federal habeas review to "second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 567 U.S. 37, 38, 132 S. Ct. 2148, 183 L. Ed. 2d 32 (2012) (quoting *Renico v. Lett*, 559 U.S. 766, 779, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)). Thus, even if the federal habeas court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly," it may not issue the writ unless it also finds that the state court's actions were unreasonable. *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012) (quoting *Williams*, 529 U.S. 36 at 411). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

## IV. DISCUSSION

The Report and Recommendation found that Gillett's Fourth Amendment search and seizure ground for relief should be dismissed because the State provided Gillett with sufficient opportunity for a full and fair litigation of his claims. *See Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas

corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."). Gillett did not object to this finding. Therefore, the Court shall review Magistrate Judge Parker's recommendation regarding Gillett's Fourth Amendment claim for clear error and being contrary to law. Finding Magistrate Judge Parker's analysis of this claim is without clear error and not contrary to law, Gillett's first ground for habeas relief is denied.

Gillett raises three objections to the Report and Recommendation, all of which are confined to his second ground for habeas relief challenging Gillett's capital murder convictions based on the state court's application of the one-continuous transaction doctrine. Gillett objects to the Report and Recommendation's (1) analytical framework; (2) one-continuous transaction doctrine analysis; and (3) sufficiency of the evidence analysis. The Court will review these objections *de novo*.

## 1. Habeas Analytical Framework

Gillett argues that Magistrate Judge Parker's Report and Recommendation incorrectly applied the AEDPA as a "standard of review" rather than "a limitation on relief." Gillett contends that 28 U.S.C. § 2254(d) "is concerned with limiting a federal court's authority to grant relief once a federal constitutional violation has been found to exist, not with attempting to influence the federal court's discharge of its Article III mandate to determine the existence *vel non* of constitutional error." [34], pg. 2. Thus, he argues, the "Court should have first determined whether there was a violation of a constitutional right and then analyzed the Section 2254(d) factors with regard to the availability of a remedy." *Id*. Gillett seems to suggest that when a district court faces a habeas petition, it should first conduct a *de novo* review of the record for constitutional errors and, if a constitutional error is indeed found, then determine whether the state court's

erroneous decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court or based on an unreasonable determination of the facts in light of the evidence on the state court's record. Implicit in his argument is that by not conducting a *de novo* review first, district courts are improperly influenced by Section 2254(d)'s text and miss constitutional errors.

The plain text of the AEDPA does not require Gillett's proposed framework. Section 2254 states in its relevant parts:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> . . . .
>
> (d) an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The plain language of Section 2254 presents Section 2254(d) as the standard of review for exhausted claims. Section 2254(a) establishes what claims a state petitioner may raise. Then, Section 2254(d) specifies that the writ of habeas corpus may only be granted if a federal habeas court determines that the state's adjudication of the claim fits the criteria of Section 2254(d)(1) or (2). The statute does not direct courts to first determine if the state court made an error of federal or constitutional law and then filter that error through the AEDPA standard of review.

Moreover, the United States Supreme Court has already determined that Gillett's proposed framework is not mandated. *See Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). Prior to *Lockyer*, the Ninth Circuit "require[d] federal habeas courts to review the state court decision *de novo* before applying the AEDPA standard of review," just as Gillett argues. *Lockyer*, 538 U.S. at 71. The United States Supreme Court "disagree[d] with this approach." *Id*. Instead, the Court found that the "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1)— whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law." *Id*. In analyzing the merits of the claim in that case, the Court did not analyze whether the state court erred at all, instead focusing only on whether Section 2254(d) foreclosed habeas relief. *Id*.

Additionally, the Fifth Circuit consistently frames Section 2254(d) as a standard of review. *See*, *e.g. Charles v. Stephens*, 736 F.3d 380, 387 (5th Cir. 2013) (quoting *Miller v. Thaler*, 714 F.3d 897, 901 (5th Cir. 2013)) ("Section 2254(d) sets forth a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"); *Jackson v. Johnson*, 150 F.3d 520, 524 (5th Cir. 1998) ("We therefore apply the AEDPA's deferential standard of review."); *Vasquez v. Thaler*, 389 F. App'x 419, 421 (5th Cir. 2010) ("Although troubled by the performance of Vasquez's trial counsel and by the divided loyalties of Vasquez's appellate counsel, the demanding standard of review imposed by the Anti-Terrorism and Effective Death Penalty Act. . . ties our hands.").

In reviewing Gillett's Petition, Magistrate Judge Parker employed an appropriate and well-founded Section 2254 analysis. Habeas review of a state court decision is distinct from review on

direct appeal. "We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable." *Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)). Gillett's proposed framework would serve to reduce judicial efficiency without changing outcomes. "[H]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)). As did Magistrate Judge Parker, this Court will focus on "the only question that matters under § 2254(d)(1)—whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 71. Gillett's objection to the analytical framework used by the Report and Recommendation is overruled.

**2. One-Continuous Transaction**

Gillett's second objection concerns the constitutionality of the state court's application of the one-continuous transaction doctrine to his capital murder conviction. To understand the one-continuous transaction doctrine and how it relates to Gillett's petition, some background information is required. Gillett was charged with capital murder for killing Hulett and Heintzelman while in the commission of the felony of robbery. Capital murder is defined in Mississippi as:

> The killing of a human being without the authority of law by any means or in any manner . . . When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve

11

(12), or nonconsensual unnatural intercourse with mankind, or in any attempt to commit such felonies.

MISS. CODE. ANN. § 97-3-19(2)(e). In turn, Mississippi's robbery statute reads: "Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear or some immediate injury to his person, shall be guilty of robbery." MISS. CODE. ANN. § 97-3-73. The Mississippi Supreme Court has explained that the elements of robbery require "that the defendant: (1) feloniously took (2) the personal property of another (3) in his presence or from his person and (4) against his will, (5) by violence to his person or by putting such person in fear of some immediate injury to his person." *Fulgham v. State*, 46 So. 3d 315, 323-24 (Miss. 2010) (emphasis omitted).

Gillett argues that the three-to-six-day gap between when he murdered Hulett and Heintzelman and when he drove Heintzelman's truck to Kansas precludes a finding that he killed the victims *while engaged* in the robbery. But, as the Mississippi Supreme Court explained on Gillett's direct appeal:

> Mississippi follows the "one-continuous-transaction" rationale in capital cases. In other words, "where the two crimes [e.g., murder and robbery] are connected in a chain of events and occur as part of the res gestae, the crime of capital murder is sustained." *Pickle v. State*, 345 So.2d 623, 627. "An indictment charging a killing occurring 'while engaged in the commission of' one of the enumerated felonies includes the actions of the defendant leading up to the felony, the attempted felony, and flight from the scene of the felony." *Turner v. State*, 732 So.2d 937, 950 (Miss. 1999) (quoting *West v. State*, 553 So.2d 8, 13 (Miss. 1989)).

*Gillett*, 56 So. 3d at 492. Gillett complains that the state court's application of the one-continuous transaction to the facts of his case violated his due process rights. He argues that the doctrine is too broad, amounts to a judicial enlargement of the robbery statute, and improperly relieved the state of its burden to prove that he intended to rob the victims prior to murdering them.

On direct appeal, Gillett framed his challenge to the one-continuous transaction doctrine as a challenge to the jury instructions given on the issue.[1] Then Presiding Justice James E. Graves, Jr. authored the *en banc* majority opinion for the Mississippi Supreme Court upholding the instructions, by relying on the one-continuous transaction doctrine and the evidence presented at trial that Gillett did intend to steal the truck. *Gillett*, 56 So. 3d at 492-93. Justice Graves explained:

> Moreover, this Court specifically has found that the intent to rob, which is required to prove the underlying felony of robbery, can be shown from the facts surrounding the crime. *Walker v. State*, 913 So. 2d 198, 224 (Miss. 2005); *Lynch v. State*, 877 So. 2d 1254, 1266 (Miss. 2004)). . .
>
> . . . .
>
> Thus, it was not error for the trial court to leave to the jury the question of whether, based on the facts surrounding the crime, Gillett had the intent to rob Linda Heintzelman. Not only was evidence revealed at trial that Gillett was in possession of the stolen truck, but a witness testified that Gillett had confessed to him that "he had taken the pickup and the owners [whom he had 'taken care of'] were in the back of it."
>
> Lastly, the primary authority on which Gillett relies to support the proposition that the State must prove that Gillett had intent to rob Heintzelman prior to killing her— *Pickle v. State*, 345 So. 2d 623, 626 (Miss. 1977)—does not stand for that proposition. Rather, as stated above, *Pickle* stands for the proposition that the crime

---

[1] Gillett challenged trial court's jury instruction S-5 and S-6. Instruction S-5 stated:

The Court instructs the Jury that in a case of Capital Murder the fact that the victim was dead at the time of taking her personal property does not mitigate against the conclusion of the robbery. If the intervening time between the murder, if any, and the time of the taking of the property, if any, formed a continuous chain of events, the fact that the victim was dead when the property was taken cannot absolve the Defendant from the crime. If you should find from the evidence in this case beyond a reasonable doubt that Roger Lee Gillett, alone or in conjunction with another, killed and murdered Linda Heintzelman and then, after the said Linda Heintzelman was dead, took the personal property of Linda Heintzelman; and if you should further find beyond a reasonable doubt that the intervening time between the time of the murder, if any, and the time of the taking of the property, if any, formed a continuous chain of events, the fact that Linda Heintzelman was dead when the property was taken does not absolve the Defendant from the crime of capital murder in Count I.

[9-6], pg. 135. The trial court's jury instruction S-6 is nearly identical to jury instruction S-5, aside from the substitution of Vernon Hulett's name as the murder victim. *Id.* at 136.

of capital murder exists where "the two crimes are connected in a chain of events and occur as part of the res gestae." *Id.* at 627. Therefore, the trial court did not abuse its discretion in allowing the jury to consider instructions S-5 and S-6.

*Id.* at 492-93.

In his Petition briefing, Gillett makes a broad due process argument against the one-continuous transaction rule's application to his case, citing several due process doctrines. Magistrate Judge Parker's Report and Recommendation categorized Gillett's claim as a judicial enlargement and fair notice argument founded under *Bouie v. City of Columbia*, 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964). Magistrate Judge Parker determined that the Mississippi Supreme Court did not violate *Bouie* because its application of the one-continuous-transaction rationale was not "unexpected" or "indefensible." [33], pg. 18. Gillett objects, arguing that Magistrate Judge Parker erred by narrowly construing his due process complaint to *Bouie*.

The crux of the variety of due process arguments Gillett makes is that through the one-continuous transaction rule, the trial court impermissibly nullified the specific intent element of capital murder via robbery by not requiring the jury to find Gillett had the intent to rob the victims before he killed them. Gillett's ultimate argument fails because the Mississippi Supreme Court's application of the one-continuous transaction doctrine in this case is a matter of state law not cognizable on habeas review. Because the Court finds against Gillett with respect to this foundational question, his individual due process claims based on the one-continuous transaction rule do not warrant habeas relief.

**i. The One-Continuous Transaction Doctrine, as Applied in this Case, is a Matter of State Law Not Cognizable on Federal Habeas Review**

"[S]tate courts are the ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975). "[F]ederal habeas corpus relief does not lie for

errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990)). Federal habeas courts may not "reexamine state-court determinations on state-law questions." *Id.* That is because federal habeas courts "do not sit as a super state supreme court on a habeas corpus proceeding to review error under state law." *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007) (quoting *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983)). Thus, "[t]he Supreme Court has 'repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Id.* (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005)).

On direct appeal in this case, the Mississippi Supreme Court rejected Gillett's contention that Mississippi law required the State to prove that Gillett had the intent to rob the victims *before* he killed them. Instead, the Mississippi Supreme Court determined that "where the two crimes [e.g., murder and robbery] are connected in a chain of events and occur as part of the res gestae, the crime of capital murder is sustained." *Gillett*, 56 So. 2d at 492 (alteration in original) (quoting *Pickle v. State*, 345 So.2d 623, 627 (Miss. 1977)). Justice Kitchens dissented, arguing that the majority's construction of the capital murder and robbery statutes was wrong. *See id.* at 529-33. Nevertheless, the majority announced its interpretation of Mississippi law, based upon its readings of the statutes and prior caselaw. *See Pickle*, 245 So. 2d at 627; *Turner v. State*, 732 So. 2d 937, 950 (Miss. 1999); *West v. State*, 553 So. 2d 8, 13 (Miss. 1989). The Mississippi Supreme Court affirmed its one-continuous transaction interpretation in Gillett's post-conviction relief opinion and in other cases. *Gillett*, 148 So. 2d at 263; *Batiste v. State*, 121 So. 3d 808, 832 (Miss. 2013) (citing *Gillett* for

the proposition that "[t]he State need not prove the defendant had the intent to rob prior to the killing").

Having announced its interpretation, it is not the function of the federal habeas court to quibble with the Mississippi Supreme Court's state law determinations. *See Bradshaw*, 546 U.S. at 75-78. In *Bradshaw*, the United States Supreme Court faced a similar situation where a habeas petitioner complained that the Ohio Supreme Court's application of its transferred intent doctrine to his case violated state law and the Due Process Clause. *Id.* at 76. The Sixth Circuit agreed, finding that Ohio statutes and caselaw forbade the application of transferred intent to the petitioner's case and the state court's decision otherwise was an improper judicial enlargement. *Id.* The United States Supreme Court reversed, explaining that it was improper to "disregard[] the Ohio Supreme Court's authoritative interpretation of Ohio law." *Id.* at 78.

A Seventh Circuit decision is also instructive. In *Curtis v. Montgomery*, 552 F.3d 578, 581-583 (7th Cir. 2009), a habeas petitioner alleged that the state did not prove the elements of aggravated stalking beyond a reasonable doubt because—while the stalking statute prohibited "remaining present outside" the victim's home, work, school, or vehicle—he was arrested merely approaching the victim's car. However, the state appellate court determined that his behavior fit within the definition of the stalking statute. *Id.* at 581-82. The Seventh Circuit found that the petitioner could not use the writ of habeas corpus to "press his preferred interpretation of Illinois law." *Id.* at 582. Moreover, the petitioner could not create a cognizable claim by "recasting their arguments as challenges to a state court's application of *Jackson.*" *Id. See Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (holding that an "applicant is entitled to habeas corpus relief

if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt").

While framed as a due process argument, Gillett's real claim is based on his preferred interpretation of Mississippi's capital murder and robbery statutes. But like the transferred intent doctrine discussed in *Bradshaw* or the stalking statute in *Curtis*, the one-continuous transaction doctrine is a matter of state law interpretation that does not implicate constitutional concerns in Gillett's case. His claim is not cognizable on habeas review.

### ii. The One-Continuous Transaction Doctrine Did Not Result in an Improper Judicial Enlargement of the Statute

A state court's interpretation of its own statutes may violate the Due Process Clause if it amounts to an impermissible judicial enlargement of a statute such that it does not "give fair warning of the conduct that it makes a crime." *Bouie v. City of Columbia*, 378 U.S. 347, 350 (1964). But Gillett did not object to Magistrate Judge Parker's determination that the Mississippi Supreme Courts' application of the one-continuous transaction rule was not "unexpected and indefensible" so as to violate *Bouie*. Instead, Gillett merely argues that Magistrate Judge Parker should not have limited the analysis to *Bouie*. Magistrate Judge Parker's finding in this regard is without clear error and not contrary to law.

"[D]ue process prohibits retroactive application of any 'judicial construction of a criminal statute [that] is unexpected and indefensible by reference to the law which has been expressed prior to the conduct in issue.'" *Rogers v. Tennessee*, 532 U.S. 451, 455, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001) "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997). The Mississippi Supreme

Court first announced in 1977 that "where two crimes are connected in a chain of events and occur as part of the res gestae, the crime of capital murder is sustained." *Pickle*, 345 So. 2d at 627. Later, the Mississippi Supreme Court held that "[t]he fact that the actual moment of the victim's death preceded consummation of the underlying felony does not vitiate the capital charge." *West v. State*, 553 So. 2d 8, 13 (Miss. 1989). In fact, a year before Gillett's trial, the same instruction that Gillett complains of was upheld by the Mississippi Supreme Court. *Spicer v. State*, 921 So. 2d 292, 315-17 (Miss. 2006), *as modified on denial of reh'g* (Mar. 2, 2006), *and abrogated on other grounds by O'Connor v. State*, 120 So. 3d 390 (Miss. 2013). In short, Mississippi has been developing and applying its one-continuous transaction doctrine for decades. It was not "unexpected" or "indefensible" for the Mississippi Supreme Court to apply its interpretation of the capital murder statute to the facts of Gillett's case.[2]

### iii. The One-Continuous Transaction Doctrine Did Not Improperly Affect the State's Burden of Proof

Gillett further argues that the application of the one-continuous transaction rule removed the State's burden of proving the intent element of robbery or improperly shifted that burden to Gillett. This is untrue. The jury was instructed that "robbery" required proof beyond a reasonable doubt that Gillett acted "willfully, unlawfully and feloniously, with the felonious intent to permanently deprive the owner therefore." [9-6], pg. 134. Thus, even with the application of the one-continuous transaction rule, the state still maintained the burden to prove intent to rob—and, as discussed at the end of this opinion, did meet that burden.

---

[2] For these reasons, even under a *de novo* review, the Court would find that Gillett's conviction did not violate the Supreme Court's holding in *Bouie*.

Gillett also claims that the one-continuous transaction doctrine relieved the State of its burden to prove that the murder occurred during the commission of the robbery. He argues that the one-continuous transaction rule has no limitations, such that any killing and any underlying felony could qualify as capital murder, no matter how far apart in time they occur. On its face, Mississippi's capital murder statute does not contain a temporal requirement. Instead, it states that the killing must occur while the defendant is "engaged in the commission" of an underlying felony. MISS. CODE ANN. § 97-3-19(2)(e). The Mississippi Supreme Court has interpreted this language as requiring the murder and the felony to be "connected in a chain of events and occur as part of the res gestae." *Pickle*, 345 So. 2d at 627. The fact that the state has not chosen to impose an arbitrary time limitation onto the statute does not implicate due process.

### iv. The Jury Instructions Do Not Warrant Habeas Relief

Gillett complains that Magistrate Judge Parker failed to specifically address the constitutionality of the one-continuous transaction jury instructions—S-5 and S-6. "Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief." *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (citing *Estelle v. McGuire*, 502 U.S. 62, 71-72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)). The appropriate test for review of state jury instructions is whether an instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 764-65 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973)). To obtain relief, "a petitioner must show both that an instruction was deficient . . . and that there is more than a mere reasonable possibility that the deficiency contributed to the verdict." *James v. Mississippi*, No. 4:17-cv-129-DMB, 2019 WL 6684510, at *4 (N.D. Miss. Dec. 6, 2019). But, as detailed already, the jury instructions Gillett complains of accurately described

Mississippi law. Because the one-continuous transaction doctrine does not present a cognizable habeas claim in this case, and since the jury instructions set forth Mississippi law, Gillett cannot show that the jury instructions explaining the doctrine infected the trial such that his conviction violated due process.

**v. Conclusion**

Despite framing his arguments against the one-continuous transaction doctrine under the due process umbrella, Gillett essentially contests the state court's construction of a state law doctrine and statutes. He has not raised any violation of the United States Constitution or any other federal law. The state law claims that Gillett poses are not cognizable on federal habeas review. Gillett's second Objection is overruled. This claim for habeas relief is denied.

**3. Sufficiency of the Evidence**

Gillett finally argues that, even if the one-continuous transaction rule itself is constitutional, the State presented insufficient evidence to find that the murders and the theft of the truck formed a continuous transaction. Magistrate Judge Parker found that the Mississippi Supreme Court's affirmation of the sufficiency of the evidence was not contrary to or an unreasonable application of the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Gillett objects, arguing that Magistrate Judge Parker's analysis was unduly deferential to the state.

Gillett's objection centers around his interpretation of 28 U.S.C. § 2254(d)(2) and (e)(1). Section 2254(d)(2) directs that habeas relief may not be granted unless the state's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Gillett argues that these two parts of the AEDPA are in tension. He proposes that, in order to remove any superfluous language, Section 2254(e)(1) should apply when a petitioner seeks to disprove a state court's factual findings with evidence outside of the record; whereas Section 2254(d)(2) should apply when a petitioner alleges that the state court's resolution of a factual issue was unreasonable. Thus, he contends, no deference is due to the state court's factual determinations.

> The Fifth Circuit has addressed the interplay between Section 2254(d)(2) and (e)(1):
>
> Whereas § 2254(d)(2) sets out a general standard by which the district court evaluates a state court's specific findings of fact, § 2254(e)(1) states what an applicant will have to show for the district court to reject a state court's determination of factual issues. For example, a district court may find by clear and convincing evidence that the state court erred with respect to a particular finding of fact, thus rebutting the presumption of correctness with respect to that fact. *See* § 2254(e)(1). It is then a separate question whether the state court's determination of facts was unreasonable in light of the evidence presented in the state court proceeding. *See* § 2254(d)(2). Thus, it is possible that, while the state court erred with respect to one factual finding under § 2254(e)(1), its determination of facts resulting in its decision in the case was reasonable under § 2254(d)(2).

*Valdez v. Cockrell*, 274 F.3d 941, 951 n.17 (5th Cir. 2001). In other words, "[t]he clear-and-convincing evidence standard of § 2254(e)(1)—which is 'arguably more deferential' to the state court than is the unreasonable-determination standard of § 2254(d)(2)—pertains only to a state court's determinations of particular factual issues, while § 2254(d)(2) pertains to the state court's decision as a whole." *Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011) (quoting *Wood v. Allen*, 558 U.S. 290, 130 S. Ct. 841, 849, 175 L. Ed. 2d 738 (2010)).

And even if the clear-and-convincing evidence standard of Section 2254(e)(1) is "arguably more deferential" than the unreasonable-determination standard of Section 2254(d)(2), Section

2254(d)(2) still "commands substantial deference to the factual determinations made by state courts." *Blue*, 665 F.3d at 654. "It is not enough to show that a state court's decision was incorrect or erroneous. A petitioner must show that the decision was objectively unreasonable, 'a substantially higher threshold.'" *Id.* at 654-55 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007)).

Moreover, the United States Supreme Court has developed a specific standard to analyze sufficiency of the evidence on habeas review. A federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The Supreme Court has explained as follows:

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

*Coleman v. Johnson*, 566 U.S. 650, 651, 132 S. Ct. 2060, 182 L. Ed. 2d 978 (2012) (internal quotations and citations omitted). A federal court may consider "whether the inferences drawn by a jury were rational, as opposed to being speculative or insupportable, and whether the evidence is sufficient to establish every element of the crime." *United States v. Vargas-Ocampo*, 747 F.3d 299, 302 (5th Cir. 2014). But, "a reviewing court . . . 'must presume . . . that the trier of fact resolved

any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Cavazos v. Smith*, 565 U.S. 1, 6, 132 S. Ct. 2, 181 L. Ed. 2d 311 (2011) (quoting *Jackson*, 443 U.S. at 326).

Where, as here, "a state appellate court has conducted a thoughtful review of the evidence," its determination of the sufficiency of the evidence "is entitled to great deference." *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993). The United States Supreme Court has stressed the high level of deference that must be afforded to state court decisions. *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011); *Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011). The Supreme Court has advised that Section 2254(d) is "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington*, 562 U.S. at 103. This high bar "ensure[s] that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding." *Id.* (citing *Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977)).

Accordingly, Gillett's proposed construction of the AEDPA is incorrect. Both Sections 2254 (d)(2) and (e)(1) apply to a state court's factual determinations—(d)(2) applying to the court's overall factual finding and (e)(1) applying to specific factual findings. Moreover, deference is due to the state court's findings regardless of which standard is used. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 102 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)). "If this standard is difficult to meet, that is because it was meant to be." *Id.*

Turning to the merits of Gillett's sufficiency of the evidence claim, he claims "there is zero evidence that the taking of the truck was any sort of continuation of the killings." [34], pg. 9; [26],

pg. 31. Gillett maintains that the three-to-six-day break between the time Gillett murdered the victims and when he drove the truck to Kansas prevents a finding that they occurred as a continuous transaction. Justice Kitchens put it this way in his dissenting opinion:

> The State may have proven that Gillett and Chamberlin killed two people. The State also may have proven that these defendants stole a truck that belonged to one of these decedents, a crime commonly known as auto theft. MISS. CODE ANN. § 97-17-42 (Rev. 2006). What the State has not proven is that they killed anyone while "engaged in the commission of . . . robbery." MISS. CODE ANN. § 97-3-19(2)(e).
>
> In the instant case, there was a clear break between the killings and the taking of the truck. Hulett and Heintzelman were killed on March 20, 2004, but Gillett and Chamberlin remained in Hattiesburg for days afterward. While Heintzelman's truck remained in her driveway, Gillett and Chamberlin visited relatives, went shopping, played basketball, installed a car stereo, and had several meals. There was no evidence that Gillett or Chamberlin took possession of the truck until they fled Hattiesburg on or shortly before March 26. Unlike the cases cited above, the time between the killing and the taking of the property was significant, and it cannot be said that "the intervening time between the time of the murder and the time of taking of the property formed a continuous chain of events." *West*, 463 So. 2d at 1055 (Miss. 1985). Therefore, the State failed to prove capital murder, and Gillett's conviction should be reversed.

*Gillett*, 56 So. 3d at 531-33.

But when viewed in the light most favorable to the State, *see Jones v. King*, No. 2:09-cv-177 KS, 2012 WL 3544840, at *4 (S.D. Miss. Aug. 16, 2012)[3], there is evidence that the robbery was part of or a continuous transaction with the murders. The record supports a finding that Gillett possessed a motive to steal the truck before he killed Hullett and Heintzelman. A few weeks prior to the murder, Heintzelman allegedly cut Gillett and Chamberlin off the road with her truck, forcing Gillett into a ditch and damaging Gillett's vehicle. Hulett's mother testified that Gillett

---

[3] "Insufficiency of the evidence can support a claim for habeas relief only if the evidence, when viewed in the light most favorable to the state is such that no 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Jones*, 2012 WL 3544840, at *4 (quoting *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001).

was "very angry" at Heintzelman over the wreck. [9-17], pg. 126. In fact, Hulett's mother testified that Gillett said that "he would like to take Linda [Heintzelman] and push her through a plate glass window." *Id.* at 127.

Other evidence showed the connection between the murders and the theft of the truck. A witness testified that, after the killings, Gillett told him that "he had taken the pickup and the owners were in the back of it." [9-18], pp. 41-42. Another witness testified that Gillett asked him to help him get rid of the truck because "there were two bodies in the back." *Id.* at 66.

Additionally, other circumstantial evidence, when viewed in the light most favorable to the State, demonstrated that the murders and the taking of the truck were part of a continuous transaction. In Mississippi, "the intent to rob, which is required to prove the underlying felony of robbery, can be shown from the facts surrounding the crime." *Walker v. State*, 913 So. 2d 198, 224 (Miss. 2005) (citing *Lynch v. State*, 877 So.2d 1254, 1266 (Miss. 2004)). And "when the defendant is discovered with the personal property of the deceased on his person it is entirely within reason for the jury to find that this fact in itself constitutes robbery." *Knox v. State*, 805 So. 2d 527, 532 (Miss. 2002). Gillett undisputedly had possession of the victim's truck after the murder.

Gillett relies almost exclusively on the time lapse between murdering the victims and driving the truck to Kansas. Gillett and Chamberlin were last seen in Mississippi on March 23, 2004. Viewing the evidence in the light most favorable to the State, then, at least three days passed between the murders on March 20, 2004, and when the truck was driven from the victims' property. But there is no asportation requirement for robbery in Mississippi. *Putnam v. State*, 877 So. 2d 468, 472 (Miss. Ct. App. 2003) ("[A] person in Mississippi can be charged and convicted of armed robbery without actually taking and carrying away the personal property of another.").

Thus, the jury did not have to find that the robbery occurred at the moment Gillett actually drove the truck off the victim's property. In fact, the evidence showed that Gillett and Chamberlin lived on the victim's property, in the victim's home, where the truck was also located, in the days following the murders.

Regardless, as discussed previously, the key question under Mississippi law is not whether the murders and the robbery occurred within an arbitrary time period, but whether the murders and the robbery were "connected in a chain of events and occur[ed] as part of the res gestae." *See Pickle*, 345 So. 2d at 627. The State introduced evidence demonstrating that Gillett had a motive to kill Heintzelman and take her truck. Gillett stayed in the victim's home—where the truck was located—after the murders. The State showed that Gillett used the truck to transport and attempt to dispose of the bodies. The State further provided Gillett's admissions to two witnesses that he had killed the victims and taken their truck. Finally, Gillett was undisputedly in possession of the Heintzelman's truck after the murders. The Mississippi Supreme Court's finding that there was sufficient evidence to convict Gillett of capital murder was not an objectively unreasonable application of *Jackson*. Gillett's final objection is overruled. Habeas relief is denied on this ground.

## V. CONCLUSION

Having fully considered Gillett's Objections, this Court finds that they are not well taken. Therefore, after full consideration, the Report and Recommendation is approved and adopted as the opinion of this Court.

IT IS THEREFORE ORDERED AND ADJUDGED that Gillett's Objections [34] to the Report and Recommendation of the United Stated Magistrate Judge is OVERRULED.

IT IS FURTHER ORDERED AND ADJUDGED that the Report and Recommendation [33] of United States Magistrate Judge Michael T. Parker filed in this cause on April 29, 2021, is ADOPTED as the opinion of this Court.

IT IS FURTHER ORDERED AND ADJUDGED that the Petition for Writ of Habeas Corpus [1] is DISMISSED with prejudice.

SO ORDERED, this the 28th day of February, 2022.


_____
TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE